# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of: | ) | |
| | ) | |
| INFORMATION ASSOCIATED WITH "JANTZEN | ) | |
| MILLIONAIRE STATUS BOND" WITH A | ) | Case No. 18-894 M (N) |
| FACEBOOK IDENTIFICATION ADDRESS OF | ) | |
| HTTPS://WWW.FACEBOOK.COM/JANTZEN.BOND | ) | |
| STORED BY PREMISES CONTROLLED BY | ) | |
| FACEBOOK OF MENLO PARK, CALIFORNIA | | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841 and 846.

The application is based on these facts: See attached affidavit.

☒ Delayed notice of _____ days (give exact ending date if more than 30 days: 9/25/2018_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Luke Hepp, DCI
_____
Printed Name and Title

Sworn to before me and signed in my presence:

Date: June 27, 2018

_____
Judge's signature

City and State: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
_____
Printed Name and Title

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Luke Hepp, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID, as further described in attachment B.

2.      I am a Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation ("DCI"), and have been a sworn law enforcement officer for more than 10 years. I am currently assigned to the Wisconsin High Intensity Drug Trafficking Area ("HIDTA") Heroin Initiative. HIDTA is composed of law enforcement officers from federal and state law enforcement agencies. Since, 2014 I have been deputized as a federal task force officer with the United States Department of Justice, Drug Enforcement Administration (DEA). As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.      During my career in law enforcement, I have investigated violations of federal narcotics laws and related violations, including federal firearms and money laundering offenses.

I have had formal training and have participated in numerous complex narcotics trafficking investigations. Based on my training, experience, and participation in drug trafficking investigations and associated financial investigations involving large amounts of heroin, cocaine, crack cocaine, marijuana and/or other controlled substances I know and have observed the following:

a.  I have utilized informants to provide information and evidence when investigating various criminal offenses. Through informant interviews, consensually recorded conversations, and extensive debriefings of individuals involved in criminal activity, I have learned about the manner in which criminal individuals and organizations function in Wisconsin as well as in other areas of the United States;

b.  I have relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.  I have experience conducting both physical and electronic surveillance of individuals engaged in illegal activity. I have participated in the execution of numerous search warrants where controlled substances, money, business records, stolen property, firearms, and records of the illegal activity were seized;

d.  I have experience with individuals who attempt to hide their illegal proceeds by the use of nominees to purchase assets; use of extensive cash purchases; use of cash payment of bills; use of safety deposit boxes; use of trusted associates to store bulk cash; and the use of legitimate businesses to report the illegal profits as legitimate business income;

e.  I am familiar with the language utilized over the telephone to discuss various criminal activities and know that the language is often limited, guarded and coded;

f.  I know that individuals involved in drug trafficking and individuals involved in illegal activity often use electronic equipment, cellular and land line telephones, and the internet to conduct their criminal operations;

g.  I know that criminals commonly have in their possession and at their residences and other locations where they exercise domain and control, business and financial records, cash, valuables, and records relating to assets;

h.  I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

2

i.      I know that drug traffickers often put their telephone in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and,

j.      I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and or/title these assets in order to avoid scrutiny from law enforcement officials.

k.      I am aware of the common use of Facebook by criminal suspects and have examined or been involved in investigations where examinations have occurred concerning hundreds of Facebook account profiles secured with the authority of search warrants or consent.

4.      I make this Affidavit in support of an application for a search warrant for information associated with the following Facebook, Inc. ("Facebook") account:

a.      Facebook Username: **"Jantzen Millionaire Status Bond,"** with a Facebook identification address of **https://www.facebook.com/jantzen.bond** ("**Target Account**").

This information is stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California. The property to be searched and information to be seized is described in the following paragraphs and in Attachments A and B.

5.      Based on the facts as set forth in this Affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 have been committed, are being committed, and will be committed by the user(s) of **Target Account**. There is also probable cause to believe that the **Target Account**, as more fully described in Attachment A, contains fruits, evidence and instrumentalities of these crimes, as described in Attachment B.

6.      The facts in this Affidavit come from your Affiant's personal observations and knowledge, as well as your Affiant's training and experience, and information obtained from other law enforcement officers and witnesses. Because this Affidavit is being submitted for the

3

limited purpose of establishing probable cause for the issuance of a search warrant, it does not contain all the information currently known by law enforcement in this investigation.

## JURISDICTION

7.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND OF INVESTIGATION

8.     I am currently participating in the investigation of a large-scale heroin and cocaine trafficker, Jantzen L. BOND, a/k/a "JB" (B/M, DOB: 11/15/1990). I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and a face-to-face meeting; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; (c) information obtained from cooperating citizen witnesses, confidential sources, and defendants, whose reliability is established herein.[1]

9.     This investigation was initiated in May of 2018. To date, case agents have determined that Jantzen BOND, has been distributing large quantities of cocaine and heroin in Wisconsin since the fall of 2016.

---

[1] Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

10.     Case agents have developed a confidential source, hereinafter referred to as "CS," who knows BOND by "Jantzen BOND" and by the nickname of "JB." In the month of June 2018, during a controlled buy, this CS purchased quantities of cocaine and heroin from BOND.

11.     Based upon my training and experience, I know that a "controlled buy" is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video recording equipment, and pre-recorded purchase money. When an informant is used, he/she is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and monitoring device. When the transaction is completed, the informant meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money. In addition, all telephone calls made by the informant while under the direction and control of case agents are recorded when possible.

12.     Throughout this affidavit, exact physical locations and dates will be omitted in an attempt to protect the CS's identity, prevent the disclosure of the CS's identity, and ultimately to protect the life and physical safety of the CS.

13.     The CS advised case agents that BOND is a large-scale drug trafficker who is from the Milwaukee area. In the fall of 2016, the CS met BOND and was actively involved in the purchase of drugs from BOND in both the cities of Milwaukee and Fond du Lac, Wisconsin. The CS has previously purchased cocaine and heroin from BOND with the normal quantity being two ounces of cocaine and between seven and ten grams of heroin. The most cocaine the CS purchased from BOND (with the assistance of another), was four and a half ounces of cocaine (powder and/or cocaine base). The most heroin the CS purchased from BOND (with the

5

assistance of another), was 1 ounce of heroin. Case agents displayed a photograph of BOND, without any identifying information, to the CS who confirmed that the individual was BOND. Furthermore, in the month of June 2018, the CS received a telephone call from BOND asking if the CS knew anyone who could distribute narcotics for BOND. The CS identified BOND's cellular telephone number as (414) 982-8305.

14.　　In the month of June 2018, the CS, under the direction and in the presence of case agents, engaged in numerous recorded telephone calls with BOND. During the recorded calls, the CS arranged to purchase 1 ounce of cocaine and 10 grams of heroin from BOND. During that time, the CS made final arrangements to meet with BOND at a location on the north side of Milwaukee, Wisconsin. The CS' recorded outgoing telephone contact with BOND occurred with telephone number (414) 982-8305.

15.　　On that same day in the month of June 2018, the meeting location was agreed upon via the recorded calls, the CS, equipped with recording devices, was driven to the agreed upon meeting location on the north side of Milwaukee by a case agent acting in an undercover capacity (UC). During that time, case agents observed a black male, subsequently identified as BOND, exit the eastern facing door of 4609 N. 28th St., Milwaukee, Wisconsin. It should be noted the address of 4609 N. 28th St. is directly above the address of 2800 W. Glendale Ave. and subsequently, both 4609 N. 28th St. and 2800 W. Glendale Ave. are two independent addresses located within the same building. BOND entered into and drove from the area in a black Chevrolet Camaro bearing WI registration 254-ZTH. A check of law enforcement databases revealed that Andrew Harris is the current utility subscriber in the upper unit at 4609 N. 28th St., Milwaukee and that Ashley Mills is the current utilities subscriber in the lower unit, 2800 W. Glendale Ave., Milwaukee. Ashley Mills had been previously identified by case agents, through

6

the utilization of Facebook and other law enforcement databases, as the mother of BOND's child. Additionally, a check through the Wisconsin Department of Transportation on license 254-ZTH revealed Sharon D. Lampley (DOB: 06/20/1970) as the registered owner. Lampley had been previously identified through law enforcement databases as BOND's mother. Case agents surveilled BOND in the Camaro directly to the agreed upon meeting location.

16.     Case agents observed the Camaro arrive at the agreed upon meeting location. The CS met with BOND inside of BOND's vehicle. BOND subsequently requested the CS meet BOND at a secondary location. The CS agreed and then exited BOND's vehicle.

17.     Case agents observed BOND drive from the area and, shortly thereafter, case agents observed BOND return directly to 4609 N. 28th St. / 2800 W. Glendale Ave. BOND exited the Camaro and utilized a key to enter the south-facing door of 2800 W. Glendale Ave. Shortly thereafter, case agents observed BOND exit the south-facing door of 2800 W. Glendale Ave. BOND returned to the Camaro and case agents surveilled the Camaro directly to the agreed upon secondary meeting location on the north side of Milwaukee where the CS was waiting with the UC.

18.     Again, the CS met with BOND inside BOND's Camaro. BOND sold to the CS approximately one ounce of suspected cocaine for $1,200 in prerecorded US currency and approximately ten grams of suspected heroin for $1,300 in prerecorded US currency. During this meeting, BOND told the CS that if the user did not like the quality of the drugs, they could, "Bring it back and get another one."

19.     Case agents observed the Camaro drive from the area and return directly to 2800 W. Glendale Avenue where BOND re-entered the south-facing door of 2800 W. Glendale Ave. after used keys to unlock the door.

7

20.     The suspected cocaine and heroin was subsequently subjected to a field test by case agents, and tested positive for the presence of cocaine and heroin, separately and respectively.    21.     Affiant is aware that Facebook and other social media accounts are a common means of communication between individuals and groups, including drug traffickers. Drug traffickers utilize Facebook to communicate with other known drug associates and customers in order to facilitate the sale of and delivery of narcotics. It is common for drug traffickers to disclose their cellular numbers and details associated with the buying / selling of illegal narcotics  in private wall posts and text messaging. Therefore, Facebook accounts are more than likely to obtain evidence of the crime of the delivery and distribution of narcotics.

22.     On June 20, 2018, case agents reviewed available content from"**Target Account.**" Case agents located numerous photographs of BOND, including the Camaro driven by BOND during the aforementioned controlled buy conducted by the CS.

23.     On June 25, 2018, case agents reviewed available content from "**Target Account**" and observed numerous photographs of Jantzen BOND carrying a backpack with captions that included the "$" emojicons. Case agents are familiar with BOND's previous City of Milwaukee Police Department arrest from February 17, 2018. Police officers involved in that arrest seized evidence of drug trafficking, including BOND's backpack containing a large amount of narcotics.

24.  On June 25, 2018, case agents reviewed available content from **"Target Account"** and observed BOND's Facebook account linked to BOND's suspected narcotics Facebook account as a "friend."

8

## FACEBOOK

25.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook permits users to establish individual accounts with Facebook, which can then be used to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public on what is commonly referred to as a Facebook "page" or "profile page."

26.     Facebook requires users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

27.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook

9

users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

28. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space on the user's page where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

29. Facebook has a Photos application, where users can upload an unlimited number of albums and photos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

30. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other

10

information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

31. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

32. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

33. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

34. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

35. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

36. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that

11

appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift.

37.    Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

38.    In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

39.    Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook also assigns a group identification number to each group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

40.    Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access

12

and use of Facebook applications.

41.     Facebook also retains Internet Protocol ("IP") logs for a given username or IP address.  These logs may contain information about the actions taken by the user or IP address on Facebook, including information about the type of action, the date and time of the action, and the user and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

42.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

43.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning a subscriber and the use of Facebook, such as account access information, transaction information, and other account information.

## REQUEST FOR SEALING AND DELAYED NOTIFICATION

44.     It is further respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the

13

application and search warrant. I believe that sealing these documents is necessary because this is an ongoing investigation. Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate, i.e., post them publicly online. Premature disclosure of the contents of this Affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

45.     Similarly, I respectfully request that notification of this warrant be delayed for a period of ninety days, pursuant to Title 18, United States Code, Section 3103a(b). Again, notification of the warrant would inform targets of the investigation and could cause them to flee the district, or to destroy evidence.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

46.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

47.     Based on the forgoing, your Affiant requests that the Court issue the proposed search warrant.

48.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Because the warrant will be served on

14

Facebook Inc. who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Facebook Account(s):

- **"Jantzen Millionaire Status Bond,"** with a Facebook identification address of https://www.facebook.com/jantzen.bond (**Target Account**)

that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered in Menlo Park, California.

15

## <u>ATTACHMENT B</u>

### Particular Things to be Seized and Procedures
### to Facilitate Execution of the Warrant

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including User ID name, full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)      All profile information; News Feed information; status updates; links to videos, photographs, articles and other such items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks

16

of which the user is a member, including the groups' Facebook group

identification numbers; future and past event postings; rejected "Friend" requests;

comments; gifts; pokes; tags; and information about the user's access and use of

Facebook applications;

(e) All other records of communications and messages made or received by the user,

including all private messages, chat history, video calling history, and pending

"Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook

posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any

payments associated with the service (including any credit card or bank account

number);

(o) All privacy settings and other account settings, including privacy settings for

individual Facebook posts and activities, and all records showing which Facebook

users have been blocked by the account;

17

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, or instrumentalities of, or contraband from, violations of Title 21, United States Code, Section 841 and 846, involving Jantzen Bond since January 1, 2018, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Messages, correspondence, documents, photographs, videos, recordings, and records pertaining to the importation, movement, possession, purchase, use, trafficking and distribution of narcotics; and

(b) Messages, correspondence, documents, photographs, videos, recordings, and records pertaining to the identity and location of the account user(s);

(c) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(d) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, as decribed in Attachment A, including records that help reveal the whereabouts of such person(s).

18

(f) The identity of the person(s) who communicated with the user ID, as described in Attachment A, regarding matters relating to the aforementioned violations of United States Code, including records that help reveal their whereabouts.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is _____. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

19

_____          _____
Date                             Signature